JAMES R. C. OLDHAM

*vs.*

ANNA B. COOPER, EARNEST H. TROTH, and RICHARD CAMPION, late trading as TROTH & CAMPION, and ROBERT LEWIS ARMSTRONG, Sheriff of New Castle County.

New Castle, Feb. T. 1877.

*Interference by equity with judgment at law.*

A court of equity will only interpose to restrain the enforcement or collection of a judgment at law, or to vacate or declare such judgment void upon the ground of fraud or want of consideration, upon proof clear, distinct, and certain of the alleged fraud or want of consideration.

BILL FOR AN INJUNCTION TO RESTRAIN THE ENFORCEMENT OF A JUDGMENT AT LAW.—On the 1st day of January, 1866, Earnest H. Troth and Richard Campion became partners with one Frank H. Haworth, as Troth, Haworth, & Campion, in the wholesale notion business in Philadelphia, under an agreement that each should contribute $2,000.

This firm was dissolved January 1, 1869, Haworth retiring ; and thereafter the same business was conducted by Troth and Campion under the name of Troth & Campion.

On the 2d day of January, 1869, James R. C. Oldham, the complainant, executed a bond, with warrant of attorney, for the confession of judgment for $5,000, with interest from date, payable semi-annually to Anna B. Cooper, one of the defendants, upon which judgment was entered in the Superior Court of New Castle County on the 14th day of April, 1873,

and execution was thereon issued December 2, 1873, directed
to Armstrong, sheriff, who levied the same according to the
command of the writ.

This bill was filed January 7, 1874, and injunction there-
on was issued January 16, 1874.

The bill prays: (1) that the bond and warrant may be
declared null and void, and the judgment thereon vacated and
discharged; (2) that Mrs. Cooper and the sheriff be perpet-
ually restrained from proceeding to enforce and collect said
judgment.

*Samuel M. Harrington,* for complainant:

Mrs. Cooper, by and through her agent Campion, obtained
the bond of Oldham without consideration, through false
representations, and by concealment of material facts.

Oldham was the surety of Troth and Campion.

A surety will be discharged by the concealment of
material circumstances. *Stone* v. *Compton,* 5 Bing. N. Cas.
142; *Pidcock* v. *Bishop,* 3 Barn. & C. 605; *North British
Ins. Co.* v. *Lloyd,* 10 Exch. 535, and Hare's note, 535.

They who seek to avail themselves of an advantage pro-
cured by fraud become partakers of the wrong, however inno-
cent their conduct may have been in the first instance.
*Huguenin* v. *Baseley,* 14 Ves. 273, 288; 2 Am. Lead. Cas. 3d.
ed. 316; 2 Lead. Cas. Eq. 2d Am. ed. pt. 2, 260.

The general principle in the English cases is that, although
to discharge a surety there must be fraud on the part of the
creditors, yet the mere concealment of an existing indebted-
ness is sufficient evidence to warrant a jury in finding fraud.
*Wayne* v. *Commercial Nat. Bank,* 2 P. F. Smith, 343–349;
1 Story, Eq. Jur. §§ 324, 325; *McWilliams* v. *Mason,* 6 Duer.
276.

*George Gray* and *Alexander B. Cooper,* for the defend-
ants:

Where the answer positively denies the allegations of the
bill, it is evidence in the cause, and can only be rebutted by

two competent witnesses, or one witness with corroborating circumstances.    Tamlyn, Ev. 51 Law Lib.; *Mt. Vernon Bank* v. *Stone*, 2 R. I. 129.

A court of equity will not ordinarily interfere to restrain the collection of a judgment by confession, unless founded upon fraud.    High, Inj. 101; *Moore* v. *Barclay*, 23 Ala. 735; Freem. Judgm. § 320.

This was not a suretyship, but an original promise.    Story, Eq. Jur. § 493, note; De Col. Guar. 67–71, 95; 27 Ala. 577; 25 Ind. 453; 1 Salk. 27; 7 Q. B. 197; 8 Phila. 307, 637; 58 Ill. 233; 35 Conn. 343; 17 Johns. 114.

As to the distinction between an original promise and a collateral undertaking, see 1 Duer, 199–206; 1 E. D. Smith, 32; 4 E. D. Smith, 639; 6 Pick. 509; 13 Allen, 136; 41 N. H. 388; 38 Me. 113; 1 Gill, 260; 66 Pa. 202.

Campion was not the agent of Mrs. Cooper.    An agent must have discretionary powers.    Whart. Ag. § 19.

An agent, by his own declarations, cannot establish his agency.    Story, Ag. §§ 44, 163.

A person cannot become an agent in a transaction where he has an adverse interest; and a person dealing with him, with a knowledge of this, must ascertain for himself the extent of such agency.    Story, Ag. §§ 9, 10, 210; 1 Story, Eq. Jur. §§ 315, 316.

Courts of equity require clear and positive proof as to fraudulent representations and concealments.    3 Greenl. Ev. § 254; 1 Story, Eq. Jur. §§ 190, 191.

*Caveat emptor* is applicable.    Adams, Eq. 178; Kerr, Fr. 108; *Henshaw* v. *Bryant*, 5 Ill. 97.

Where fraud is alleged in the bill, and not established by proof, the bill will be dismissed, notwithstanding it may contain other equities.    High, Inj. 168; 1 Hayw. L. Reg. 128; 2 R. I. 129; 22 Eng. Ch. 310; Kerr, Fr. pp. 382–384.

THE CHANCELLOR.—This is an injunction bill which prays the restraint of an execution in the hands of the late sheriff of New Castle County, issued upon a judgment in favor of

Anna B. Cooper, against James R. C. Oldham, the complainant, and a perpetual injunction against the enforcement and collection of the judgment.

The grounds upon which the equitable interposition of this court is asked are stated in the bill to be: (1) fraud in obtaining the bond and warrant upon which the judgment was entered; (2) want of consideration for said bond.

It appears that Earnest H. Troth and Richard Campion, two of the defendants, together with one Frank H. Haworth, were doing business in Philadelphia, December 31, 1868, under the name of Troth, Haworth, & Campion; that on that day said firm was dissolved by the retirement of Haworth therefrom, and a new firm was formed on the 1st day of January, 1869, between Troth and Campion, under the name of Troth & Campion. Oldham was the uncle of Troth, and Mrs. Cooper was the sister of Campion. The new firm wanted money. Its members — one or both (in this respect the statements of the bill and answers are conflicting), it matters not which — called upon Oldham to advance or loan to the firm $5,000, representing to him that an additional sum to that amount would enable the firm to extend their business and make money. Oldham was seen several times in reference to the raising of money for the firm, or for Troth for the use of the firm, as is differently alleged in the bill and answers. The result of the negotiation was that no money was advanced or lent by Oldham, but he executed a bond for $5,000 in favor of Mrs. Cooper, who, he was told, would advance the money on it, and delivered it to the firm, or to Campion, in the store of the firm,— both members being present,— and the bond was placed in their fireproof safe, as the bill alleges, by Campion, with the assurance that that was the last that Oldham would or should ever hear of it. In fact the bill substantially charges that Oldham signed the bond upon the representation that he would never be called upon to pay it.

There can be no doubt the new firm, which had assumed the debts of the old firm, was, as the bill charges, insolvent

at the time the bond was signed by Oldham; and I have no doubt that the members of the firm—one or both—made substantially to him the false representations charged in the bill.

If, however, these false and fraudulent representations were made by Troth and Campion—both, or either of them—to induce Oldham to sign the bond, and if he was induced thereby to sign it, the fact that they were made can have no effect in the determination of this cause, unless it appears that Mrs. Cooper was present at, privy to, or in some manner responsible for, the making of them. It is not proved, nor is it alleged, that Mrs. Cooper was personally present at any of the interviews or negotiations mentioned between Troth, or Troth and Campion, and Oldham; and in her answer she positively denies any knowledge of these interviews or representations made to induce Oldham to execute the bond. It is sought, however, to make her responsible for such false and fraudulent representations, on the ground that Campion was her agent, and therefore the acts and declarations of her agent bind her. The principle of law announced is correct. Is its application to the present case warranted by the proofs in the cause? It is in evidence that Campion was regarded as the agent of Mrs. Cooper by one—perhaps by more—of the witnesses; that he represented himself as her agent, and that he made or caused entries to be made on his books, as agent. There is no proof that in this particular transaction with Oldham he was agent for Mrs. Cooper. He and Troth were negotiating with Oldham for a loan of his credit for their own benefit. It is nowhere stated that Mrs. Cooper desired to invest money on bond or other security, and that Mr. Oldham was solicited to borrow for her accommodation,— in fact the material allegations of the bill are inconsistent with such a supposition. If those allegations are true to the extent claimed, Mrs. Cooper was a conspirator with Campion not to lend money to Oldham, or to Troth, or to Troth and Campion, but to procure Oldham's bond without consideration advanced therefor by her, but for the purpose of collecting from him the amount thereby secured to reimburse her for moneys

which Campion, or Troth and Campion, had theretofore received from her, or had applied to debts due by them to others, or for which they were then in some manner accountable to her, and which otherwise she would lose.

Campion was the brother of Mrs. Cooper. He might have done, and doubtless did do, many things for her, or in respect to her business, which, considering their relative situations, indicated understanding and agreement between them in respect thereto; but the proof of what the law regards as agency in any respect is not only not conclusive, but barely presumptive; and, in respect to the particular transaction of the execution of the bond by Oldham, the proof utterly fails. Mrs. Cooper, in her answer, denies that Campion was her agent. It has not been shown that he ever represented himself as her agent in any negotiation with Oldham, or that Mrs. Cooper had knowledge that he represented himself to others as her agent. His own representations that he was her agent, if any such were made, and entries by him in his books, or on the books of others, to that effect, do not prove his agency, unless such representations or entries were made with the knowledge or privity of Mrs. Cooper. There is no proof in this cause that they were so made. A person claiming to be the agent of another cannot prove the fact of his agency by proof solely of his own acts or declarations. Neither can third parties so prove his agency. There must be satisfactory proof in some manner, of appointment, recognition, or ratification by the alleged principal. Such proof is wanting in this cause. The truth is, Oldham was a kind-hearted uncle, willing to aid his nephew; and, relying upon the assurances of that nephew and his partner, he signed the bond. If it shall prove to be unfortunate for him that he did so, that result will be owing to misplaced confidence in those who have shown themselves unworthy of any confidence.

Mrs. Cooper, in her answer, denies that Campion was her agent. The evidence does not satisfactorily establish a general agency by him for her, independently of the answer; and the

proof of any such agency is, in view of the positive denial contained in the answer, wholly insufficient to establish it. No special agency in respect to the particular negotiations with Oldham by Campion, or in respect to the execution of the bond by Oldham, is sufficiently established by the evidence; and upon this particular ground the complainant's right to relief fails.

But the position of the complainant in respect to the debt sought to be enforced at law is presented by his solicitor in a twofold aspect.

First, he is regarded as a surety for the debt of Troth and Campion. They are said to be the real debtors to Mrs. Cooper, and Oldham their surety; and if he be such surety he is only liable for the amount of money actually advanced by her on the faith of Oldham's bond, which the complainant contends was none, or a comparatively small amount. If the fact be as suggested, the law, as applicable thereto, is correctly stated. As a surety he would not be bound to pay in this court beyond the amount of money advanced to his principals, with its legal interest. Again, it is suggested that he was only a guarantor of the debt due by Troth and Campion to Mrs. Cooper, as evidenced by the bond; and if the contract by Mrs. Cooper was to let them have $5,000, and she in fact, without the knowledge of the guarantor, let them have only part of that sum, or if she advanced in money a part only of the stipulated amount, and released a debt theretofore due by them to her, and of sufficient amount to make up the sum of $5,000, and this was done without his knowledge,— then, in default of payment by them, he would not be bound to pay anything on the bond, not even the amount actually advanced in cash by her to them. If the facts are as stated in this respect, the law is correctly stated. In such case the guaranty is a contract between the guarantor and guarantee. Any alteration of the contract or act done by the guarantee, in fraud of the guarantor, discharges his liability in whole on the guaranty. In the view which I take of this case, the undertaking of Oldham was not that of a surety or that of a

guarantor. As between him and Mrs. Cooper the contract was an original one. By signing and delivering the bond; and upon her advancing the amount thereof at his request, or according to an agreement or understanding on his part that it should be so advanced; and if she did so advance it,— he became her original and sole debtor, and she became his creditor to the amount so advanced. Did she advance to Troth and Campion or to either of them, for the benefit of their firm or for the individual benefit of either of them, according to agreement between her and Oldham, or with the understanding by Oldham that such advancement should be made, the said sum of $5,000, or any part thereof, after the execution and delivery of the bond, and upon the faith of the bond? If she did, he is, in this court, bound to pay her the amount so advanced. Whether she did so advance her money is the material question in this cause. If the money was so advanced by her, she was not bound to see to the application of the money by the firm, whether to prior or subsequent debts. She was, however, bound to advance money. She could not, by releasing the firm from previous indebtedness to her, hold Mr. Oldham responsible to her on his bond for the amount so released. If the firm had used, antecedently to the making of this bond, any money of hers which she had on deposit with them, to pay debts due by them to other parties, she cannot hold Oldham responsible on his bond as a security for the amount so used. What are the proofs in the cause on this subject? The question is one of fact, and the fact must be determined by the evidence.

The bill charges that no such sum of $5,000, or any part thereof, was advanced or loaned by Mrs. Cooper to the firm of Troth & Campion at or about the time, or since, the said bond was executed; that the purpose of Mrs. Cooper and Campion was fraudulent, to obtain from the complainant additional security for sums of money theretofore advanced and loaned by her to said firm on account of a debt of $12,500 which the firm owed her; and that the bond of $5,000 was without any consideration whatever, and that it was not, and

is not, the basis or security for any loan of money to the said firm.

These material allegations and charges of the bill are substantially and repeatedly denied by the answer of Mrs. Cooper. Her answer in denial must be taken as true, unless it is disproved by the testimony of at least two witnesses, or of one witness and the proof of corroborating circumstances amounting in effect to the positive testimony of an additional witness. As fraud on the part of Mrs. Cooper in obtaining the bond must be affirmatively proved by the complainant, who charges it, so the burden of showing a want of consideration for the bond is upon him. The bond is *prima facie* upon good or valuable consideration ; the seal imports a consideration, and it is obligatory until impeached. Besides, she answers in substance, and responsively to the allegations of the bill, that she did advance the sum of $5,000, the consideration of the bond, and upon its security for repayment; and that the money so advanced was not applied towards payment of the sum of $12,500 owing to her, as charged by the bill.

Fraud on the part of Mrs. Cooper has not been satisfactorily established, and no witness has proved that her denial of the material allegations of the bill above stated is untrue, or satisfactorily proved that the allegations are true. Only two witnesses were examined on behalf of the complainant, —J. N. Troth, the bookkeeper, and Earnest H. Troth, partner of Campion. The former does not know, of his own knowledge, that the $5,000 was paid, but does not say it was not paid. He says, in effect, he thinks part was paid in before the date of the bond, and part afterwards. His testimony is confused and uncertain, and is wanting in that directness and precision which gives value to the statements of a witness.

I regard the testimony of Earnest H. Troth as equally uncertain and unsatisfactory in respect to the material matters involved in this controversy.

The books of the firm of Troth & Campion have been introduced by the complainant to sustain the allegations of his bill in respect to the sum of $5,000 therein entered as

additional capital under the date of January 1, 1869, and in respect to its disbursement or application to the debts due by the firm. I shall not analyze the contents of any of those books, or comment upon the several or any of the items appearing in them. Even were they capable of being understood without an interpreter, and were clear, definite, and certain in character, the material question would suggest itself then, as it suggests itself now, What relevancy have those books as evidence in this cause? What fact can be established or disproved by them? These are not the books of Mrs. Cooper; the evidence in no manner connects her with them, and there is no proof that she ever saw them. They are, therefore, as to her, *res inter alios acta*. If upon every page of them there was written "The bond from Oldham to Mrs. Cooper was obtained by her through fraud," or that "the bond was without consideration," her interests could not be affected thereby.

In the absence of satisfactory proof connecting Mrs. Cooper with the alleged deceptions practiced upon Mr. Oldham; upon the failure of proof of a want of consideration for the bond; regarding Mr. Oldham's liability as original and in no sense auxiliary or collateral, and adhering to the well-established doctrine that a court of equity will only interpose to restrain the enforcement or collection of a judgment at law, or to vacate or declare such judgment void upon the ground of fraud or want of consideration, upon proof clear, distinct, and certain of the alleged fraud or want of consideration, I decline to continue the injunction heretofore issued in this cause, or to decree further relief. The answer, however, states that a negotiable note for $500 was given by the complainant towards payment of either interest or principal of the bond, prior to the commencement of this suit; which fact is, however, denied by way of anticipation in the bill.

I shall order that the judgment of Mrs. Cooper against the complainant be credited with the amount of said negotiable note (it having been subsequently negotiated), as of the

day it was made; that the preliminary injunction heretofore issued be dissolved; and that the bill of complaint be dismissed, with costs, on the usual terms. Let a decree be drawn accordingly.